May it please the court, my name is Randall Barron. I represent Mr. Golub. In this matter, I'd like to reserve three minutes for rebuttal, if I may. We are here to determine two issues that the court must review de novo. The question is whether or not plaintiffs have, plaintiff appellants have, plausibly alleged that there are materially false or misleading statements in the merger proxy, and if so, whether or not defendants are nonetheless immune from liability under the PSLRA State Safe Harbor. To be clear, it is a very, in our view, it is a simple case. There are fundamentally just two statements that we have raised as issues. We've broken them down a little bit within the complaint, and some of them are repeated more than once in the proxy, but the statements are fundamentally that which is set forth in paragraph 797E of our complaint, and that's ER 161, or the proxy statement of 43, where the board agreed that they needed Gigamon's best estimates of long-term financial outlook in order to properly their prior long-term plan was the case B projections, but that the board determined that Gigamon's recent performance, and this is really the key, the recent performance clearly suggested that the case B projections overstated Gigamon's long-term prospects, and the board then determined that the case C projections appeared to better reflect. Adopting the case C projections over the case B projections fundamentally wiped out approximately $4.1 billion of revenue of this company and approximately $1.2 billion worth of cash flow, which was just enough to allow the bankers who did a fairness opinion to determine that this was a price within a fair value of the company. The second statement is related to that, which is the more generalized statement that the board determined that the merger was fair and in the best interest of shareholders, and again they did that based upon the investment bankers valuation based on the case C projections, so again that statement is again undermined by the very same facts that we set forth in our complaint. In our view, there are fundamentally three ways in which statements like this which are a mixture of both opinion and some currently or current or historical statements can be found to be false or misleading under federal securities laws. The first is from under Virginia Bank shares is that the belief in the opinions and that they in this case that case C is a better reflection and that the merger is fair is not an earnestly held belief. The second it comes from Omnicare sort of describing what Virginia Bank shares was talking about and in that case the Supreme Court said not only that liability can rest not only if the speaker did not hold the belief she professed, but also if the supporting facts she supplied were untrue and again the supporting facts in this statement was that things were so bad in the third period in the third quarter of 2017 that we now needed to shift from what was our agreed to plan and fundamentally drop out that four plus billion dollars of revenue. And finally the third way that these statements can be found or you can be liable under these for these statements is under Omnicare where even if you do genuinely believe the statement of your belief that if there are omitted facts that would undermine that that would call that would show that there is a lack of basis for that belief again that would demonstrate that those statements were that are actionable at least at the pleading stage. Here what we have done is we have pled detailed facts in quotes in fact that show that those state that all three of those attributes apply in this case. We have pled and I'm not going to go through it in length although it is in our complaint and in our briefing that we have showed first that the company consistently said that they had long their long-term prospects were great they were saying that they were continuing to accelerate at anywhere from 32 to 41 percent that they were growing far and away faster than anyone in the market that's paragraph 46 that they that they were year after year getting better that's paragraph 49 and most importantly what we allege at paragraph 62 of our complaint is that in the third quarter itself the very quarter in which the support for the belief is saying things got bad they weren't saying that the bookings was increasing was the strongest that they've seen in the last three years that means while the revenue was not coming in the source of that revenue was going up beyond where it had ever gone before and that they have a good deal of confidence in there so again we're undermining both the belief and in fact the support for that belief we also we also know that just some softness in the second and second and third quarter would not be enough to really justify that statement as well because again their own ceo and this is a paragraph 81 of our complaint made it very clear that the company did not look at a quarter by quarter basis they understood that revenues may slip and slide between quarters and the issue were the bookings and the growth and that therefore the business was not quarter by quarter in fact he specifically said we are not a quarter by quarter business and that this is a long-term play there is not a short-term window and we also allege that the timing of that adjustment from the case b or to case c was suspect and again if inferences are to be drawn in our favor would demonstrate that they were not done for that for the purpose of the softness in the second and third quarter it was done because of the bid in fact we allege specifically that they continue to use the case b and that the case b was discussed and the board met at least four times between this purported softness and the adjustment where they never adjusted down to case b and they only did so when the buyer elliot who had bought into the company as an activist investor made it best and final and they needed a forecast that reduced by that 4.1 billion dollars in order to get a opinion that says this was fair based upon their own internal valuations and finally we also allege that there wasn't a basis for that dramatic shift right that the shift that they had not only took out the third quarter but it took out some you know as we said billions of dollars reducing the revenues from 10.4 billion to 6.4 billion and and cash flows from 2.1 billion to 905 million so there was a significant reduction that again doesn't make sense for just a softness in a quarter and this is what we allege specific omissions that would actually undermine that under omnicare and we said they they omit the fact that they were in the midst by the time they actually did the reduction they were in the midst of a record fourth quarter a fourth quarter that would have made up for the problems that they theoretically had in the does the complaint or the record indicate what those fourth quarter results actually were no we can't we don't have have that information the company was no longer public they never produced that there is all we have again because we have to draw reasonable inferences in our favor is their own statement that it was a record fourth quarter that they indicated that that was the highest quarter of growth in gigamon's entire existence that was a quote that came from them in a representation to the public market so we don't have those what was the date of that representation that date was um in the fourth quarter let me get that for you on may 2018 so again what we know what we know is that they they were aware of that information they had every basis to believe that the third quarter numbers were not a justification and finally our last submission is the fact that had we actually gotten the case be updated remember they did the fairness opinion on case c updated had they had they provided that they would have they would have been able to show that they had adjusted for the softness in the second and third in the updated case b they didn't need to double count i.e move both a adjustment for the third second and third order and then shift do that seismic shift from case b to case c i'm going to say the defendants don't challenge that the allegations as we make they try to make another argument which is fundamentally that the facts of this case are different than what we say that is directly in contrary to this court's opinion and cohab the therapeutics that was issued in 2018 in fact they did exactly the same thing they're not saying that the that our allegation that the softness didn't account for it they're saying no we really had a lot of softness and they did so again much like in coha with 21 documents submitted added to a complaint a thousand pages of documents and argument in support of that none of that should support a grant of a motion to dismiss in this case because we're not supposed to do that here finally defendants make the argument that this is protected by the state harbor and that is significantly problematic they do so without actually citing the current state of the law which was what the what this court issued in quality systems which is that there are mixed statements of fact and when there are mixed statements of fact in law or forward-looking statements and current statements that you still look that those are not protected here we are talking about the current statements of what was the company's current belief what was the current support for that belief at the time they issued because again we don't know what we do know from what we do know from quality systems is that the idea is that we have forward-looking statements if there's predictions of revenue and earnings over time and those aren't born out we don't know whether or not those projections were born out other than in the fourth period we know things were good but that's not the issue the issue is did they have the is that the if there are cautionary language it needs to be precise and meaningful as quality systems noted this is in order to in order for in order for it to work you fundamentally have to admit your own violation in order in order to have a meaningful cautionary language what they did here was provided uh provided share or shareholders with the same boilerplate language that the same lawyers used in six different merger proxies at the very same time you cannot just simply cut and paste meaningful cautionary language or that would undercut the entirety of the of the need for meaningful cautionary language i'd like to reserve the um i guess not so reserve your your two minutes all right thank you may it please the court good morning jerome burn for the gigamond defendants i will be speaking for 12 minutes and then sharing time with mr lutz who will speak for three minutes gigamond here did not violate section 14a by making a false or misleading statement in the proxy statement that was sent to the shareholders uh seeking their vote for the elliott acquisition um i think it's important to start by noting this is not a merger case we're not here debating the merits of this decision simply a disclosure case under 14a it's a very false or misleading statement made in the proxy statement and judge borick's very well-reasoned and thoughtful decision provides two straightforward grounds for affirmance which i'd like to address first the safe harbor here uh covers this case because all the challenge statements are forward-looking second i'd like to address the virginia bank share standard there are no well pled facts as required by the private securities litigation reform act showing that what the board said was objectively or subjectively false that's independent from the safe harbor argument and finally council did mention omissions and omnicare i think it's very important i will get to that at end but to stress that this court has never held that a pure emissions case can be made under 14a indeed in omnicare judge justice kagan noted virginia bank shares still sets the standard and the statute is different under 14a it requires uh something to have rendered a false statement in the in the proxy let me turn to the safe harbor um council's argument i believe is effectively conceded we're talking about forward-looking statements um the statements are that the board's the the brief uh the reply briefing pages 16 to 17 make this absolutely clear uh they note that now paraphrase the case b projections overseated some of them at least two of the misrepres i guess one yeah misrepresentation one is not a forward-looking statement right it says the proxy statement informs shareholders that our board of directors unanimously determined that the merger is fair to it in the best interest of the company that's not forward-looking that's a present yeah your honor actually i i think it should be interpreted to be be forward-looking that there's no dispute that the board in fact reached that result and in saying we believe the merger is fair the rest of the statement goes on to say it's fair based upon the forecasts that we believe are going to come true so it's it's saying this is fair because we think this is going to happen there maybe at most it's mixed well i i actually would your honor i would suggest that it really is forward-looking because the fairness is that in fact we believe this is going to come through it's the same thing when when someone makes a forecast uh they don't the implicit in that in that statement is the belief that the forecast is going to come true same thing is saying i believe this is a fair forecast the safe harbor really isn't written a statute to to mince words about that and and what really distinguishes this case from quality systems that council referenced is that there are no present tense facts that are alleged to be false council has embraced while many different facts stated by the company at year leading up to the merger but unlike in quality systems they don't claim those are false facts they claim those are true and that undermines the forecast so it undermines the well it it demonstrates in their view it demonstrates subjective falsity because the statements leading up to the actual um merger and and going private um i guess acquisition by elliott um were all rosy and um and they belie and and included such things as and this is a quarter by quarter company we only look at things quarter and you shouldn't look at things quarter quarter we look at the long term and so some of those statements actually belie what the board was saying in the proxy statement and um therefore it undermines the objective um falsity i mean it supports the subjective falsity of the statements in the proxy in the proxy statement so let me let me address that and and go to address the objective and subjective falsity um because there are some facts here that are absolutely not in dispute the company's results for the four quarters leading up to the merger are not in dispute and they were poor declining consistent four quarters in this report two and quarter three were actually below expectations quarter four of 2016 was the beginning of the disappointment when the when the growth rates declined dramatically from over 40 to 20 quarter one was essentially flat and then the company missed its expectations for q2 badly and q3 badly much to its prize i mean down quite as bad as q2 though right well it i mean it depends on you measure badly they were down uh eight percent below what they expected in q3 believing q3 was going to look good three percent growth it was five percent down um you know i would note that significantly surprising because in that time frame they were talking to elliot and they they rebuffed elliot's at that point and said we think actually q3 could turn out well and they got surprised again so you have the situation a company consistently missing four straight quarters leading up to an acquisition it's reasonable to say the board should be pretty skeptical of where the business is going um one important point i do want to make is for all the reference to these these positive statements the plan is to take them completely out of the context of time and that that matters and i would point to the very first sentence of their reply brief where they refer to and i'll pull the snippets that the company was quote growing by far and pipeline or quote glide path to continued growth these statements were made over the course of different points in time and during an entire year and that matters so let me ask you a question yes good to benefit from having a depressed stock price at the time of the um of the going private transaction who stood to benefit from having a depressed stock price i don't know that anyone to benefit from a depressed stock price i don't elliot elliot but elliot didn't make the statements in the proxy statement right well your honor i mean yeah you can always say that if the price of the company is lower than then i think you answered my question in a straightforward manner you know the answer to it well your honor i i think i guess the answer is sure the buyer would benefit from it but it doesn't mean who else anyone else in the board on the board perhaps a ceo well there's no allegations that anyone benefited i'm just wondering i have equity whether there it's it's a legitimate question i mean assessing uh a subjective falsity um why would you know who would who would have the incentive to actually um project a lower stock price than what they believed was true but you know i i don't think management and the board have an incentive for a lower stock price because to the extent they hold equity a declining business and declining stock price hurts them too great and that's correct i agree with you not um perhaps not all management right i mean if you're before and the ceo after and in between you have record um the record business and after it's private so you no one will know what it is well let me i'm sorry go ahead no it's okay i'm just trying to you know look at the plausibility of this whole thing well no there's always a possibility that someone could say there's always a possibility someone could say well the management or the board sold out too quickly but you you must look at the context of this company that's and not disputed going in which is a rapid decline in the business and let me address the q4 point that your honor raised because there is no evidence that there was a q4 record that was different than what was projected by updated case c that the board relied on and that's a very important point oh that the board relied on yes i agree yes updated c was what the board proposed to the shareholders as their estimate that forecast projected a record fourth quarter so the statement in may when the company said we put a record close as judge oric noted that's consistent with updated case c there's no evidence that anything projected by updated b or which was frankly a draft that the board never got very far on a preliminary estimate before they went with updated case c there's no evidence that the board actually achieved what the plaintiffs say was achieved there's no basis for that that finding it wasn't as if updated c that went to the shareholders was projecting this company is dead in the water it was projecting growth of over 27 for the next year so when you look at the entire you can always ask who has a motive to do what but when you look at the board at that point in time after multiple quarters of after a very surprising third quarter what should we do with our forecast not only is that protected by the safe harbor in my opinion but there's no basis to show that that's false because your response to his contention that the timing of the shift by the board from b to c is something that supports an inference what's your response to that your honor thank you for asking um i have really a few responses one is um it ignores this the shocking disappointment of the q3 results and if you look at that timing uh as late as mid-september the company said no to elliot we're not interested we actually think q3 is going to be okay so they said no so that's important to consider and then the proxy lays out which is not disputed shortly after the september quarter closed the board learned of the shocking surprising results so there are cases at points that is the intervening event the board was justified in saying you told us management three weeks ago we were going to be have a great quarter and should say no to elliot and now we're down we're eight percent off which you thought in the last two weeks so that isn't that an important intervening event along with the fact that there's no evidence that the company was jumping at the elliot uh had twice said no in may it had said no uh thinking q2 was going to be good and in september again they had said no thinking q3 was going to be good um so there's no sudden change that is inexplicable uh you have a business in decline and i again i want to emphasize the updated c projections were not for a flat dead company strong growth into the next year strong growth going forward uh but but just not as robust growth as updated b the allegation or at least the argument um is that um the transaction took place in the middle of q4 and that the the board and others involved in the transaction team were um aware of that that uh q4 would be good they were getting information at that time that was the lie the updated c um uh the projections upon which they relied so your honor the um the there is no well-planned fact showing what was the what what was known at that point in time there's nothing to show that what was known was different from what updated kc was showing and a point i would make that's that's important is it's not just about q4 q4 was a record supposed to be under updated c or under b um the it's not about q4 it's about the overall projection so for the plaintiffs to show objective or subjective falsity they would have to say that somehow the q4 interim results were so much better than what was expected that the company the board should have thought the company was going to jump up on the trajectories back up to rapid growth under updated case b and and there's there's nothing to show that all the plaintiffs have said is that the board might have grown i think 102 to 106 versus 93 which was in the um in the updated kc projections um so there's no basis for that and you know recent history is important here um the board had as i mentioned had said no to elliot i'm mindful of my time for q2 and q3 results were going to be okay and in fact they were not and they were surprised so there's no basis to conclude that mid-december they must have known that the quarter was heading off to record levels beyond what was predicted you addressed your point which you alluded to earlier that the omnicare standards do not apply in a 14a case uh yes judge collins um 14a under this court's desegador case has always required a miss a misstatement as to in a proxy statement uh so if there is an omission it must render misleading something in a proxy statement itself a statement um omnicare addressed the section 11 and this court's interpreted to apply to 10b area um but but justice kagan's decision notes that the standard under 14a which is different statute um virginia banksters still applies so you still need to tether you it's not enough to say there's a pure omission out there it must be tethered specifically to a misstatement alleged misstatement in the proxy with that i'm sorry mr lutz i have taken up more time than expected it's okay i'll just be just a note on the waiver um mr baron didn't respond to it um that the law is clear in the ninth circuit that when a claim is dismissed with leave to amend and then the plaintiff does not amend the complaint to add that claim back it's waived for and cannot be appealed um i see my time is up but that that issue was very clear under ninth circuit law well yeah i'll give you a couple minutes to say what you wanted to say uh sure no i i appreciate that i mean that's the summary i mean you know in this case the law is clear in the ninth circuit that a claim that is not um that that the claim has been waived here the plaintiffs filed an original complaint that named uh that elliott with a single claim under section 20a a controlled person claim the district court dismissed that claim but and granted leave to amend plaintiff filed an amended complaint but chose not to assert that claim or any claim against the elliott defendants the law under the lacey the maricopa county case and other cases that have followed it in the ninth circuit is clear that um when claims are dismissed without prejudice and then not repleted those claims are waived and cannot be subject to appeal they can't be appealed um plaintiff's only response is is in our view not a credible one and they say on page 29 of their reply brief that they they didn't voluntarily dismiss their claims against the elliott defendants that that is just not correct all of the cases that we've relied on and cited to in our briefing make clear that this is exactly what plaintiffs did when it was given the opportunity uh but chose not to replete its claim against the elliott so under clear ninth circuit law that claim was waived thank you thank we are they're dismissed with prejudice we are our interpretation is the court dismissed them we have no choice and we would actually be in trouble for actually picking it let me focus on the um mr burn's arguments because it is exactly what this court said in coha which is quote if defendants are permitted to permit present their own version of the facts at the pleading stage and the district courts accept those facts as uncontroverted and true it becomes near impossible for even the most aggrieved plaintiff to demonstrate as efficient and that's what he's done he says they're not they're not disputed they are we are disputing that the second and the third order were problematic we are specifically pleading that in june he said growth rates were the growth in business continued to accelerate in november of 2016 we are growing by far and away the fastest in the market in may 16 2017 the cfo said the company has grown 40 percent per year every year since its founding except for one so it looks pretty good on the chart in july 27 in july 27 2017 this is in the middle of the third quarter he said quarterly growth and bookings was the strongest that we have seen in the last three years and the increasing interest in our broad portfolio of the world of security products provides us with a good deal of confidence regarding our future our future again they are saying exactly the opposite that is what mr baron isn't it a fact that the q2 and q3 results were not as good as expectations and fell below what they thought that that is that is a that is not just because your numbers don't remember the way that results work in and indeed the ceo said it this is not an industry in which you get all the money in at the same time the key to the this industry is your bookings and things get delayed sometimes stuff gets pushed into the fourth quarter gets pushed into the following first quarter that that is not an indication of growth there is no statement that mr burn presents or otherwise in which the company says no we were no longer growing in the second and third quarter the way we believe we were growing it said that their earnings and revenues had had barely missed and it wasn't significant misses had barely missed and you can't say it was a devastating fourth quarter or third quarter because that a isn't what we plead and b it was it was something that was made up and could have been made up in the fourth quarter by the end of the year but at the pleading stage you have to accept our allegations you can't accept mr burn's argument because if that were a case you could never plead it because they would just flood the record with documents and say no except our inferences over plaintiffs all right any other questions i'd be happy to answer them does anyone have any other questions all right thank you very much counsel golf versus gigamon will be submitted and this session of the court is adjourned for today thank you this court for this session stands adjourned
judges: Fernandez, Wardlaw, Collins